Landus ROSS and Eddie
Imperial, Plaintiffs,

v.

Marvin RUNYON, et al., Defendants.

Civ. A. No. H–93–1933.

United States District Court,
S.D. Texas.

July 18, 1994.

Cynthia Jean–Marie Cline, Houston, TX, for plaintiffs.

Larry C. Marcy, U.S. Attys. Office, Mary Ann Starks, Marvin B. Peterson, Houston, TX, Susan L. Catler, O'Donnell Schwartz & Anderson, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is the Motion to Dismiss or in the Alternative for Summary Judgment (Docket Entry # 56) filed by defendants Marvin Runyon ("Runyon"), in his capacity as the Postmaster of the United States Postal Service (the "Postal Service"), the Postal Service, and the United States of America (collectively "the postal service defendants"). The postal service defendants seek dismissal for failure to state a claim, or in the alternative summary judgment, on allegations that they breached the collective bargaining agreement between the American Postal Workers Union, AFL–CIO (the "APWU") and the Postal Service. The postal service defendants also seek dismissal for lack of subject matter jurisdiction, or in the alternative summary judgment, on various tort claims. On the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the postal service defendants' motion should be granted.

### I. Background.

Plaintiffs Landus Ross ("Ross") and Eddie Imperial ("Imperial"), employees of the Postal Service, are suing the postal service defendants, as well as the Postal Workers Union, both the national and the local, and the President of the local, Stapleton (collectively the "union defendants"). They allege that the Postal Service breached the collective bargaining agreement between the APWU and the Postal Service and that the union defendants breached their duty of fair representation. In addition, Ross asserts various tort actions under both the Federal Tort Claims Act and state law, as well as employment discrimination and retaliation claims under Title VII, against the postal service defendants.

### II. Analysis.

#### A. Breach of the Collective Bargaining Agreement.

The postal service defendants maintain that they are entitled to summary judgment on Ross and Imperial's claims for breach of the collective bargaining agreement because the plaintiffs cannot establish the essential elements of such a claim.

■ The relationship between the Postal Service and its employees' bargaining representatives is governed by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq., which is made applicable to suits involving the Postal Service by the Postal Reorganization Act, 39 U.S.C. §§ 1209(a) & (b). McNair v. United States Postal Serv., 768 F.2d 730, 735 (5th Cir.1985). Under § 2 of the Postal Reorganization Act, federal courts have jurisdiction of disputes arising under collective bargaining agreements executed by the Postal Service. 39 U.S.C. § 1208(b). That section is the "analogue" of § 301(a) of the LMRA, 29 U.S.C. § 185(a). Id.; National Ass'n of Letter Carriers v. United States Postal Serv., 590 F.2d 1171, 1174 (D.C.Cir.1978). Thus, the deci-

sions under § 301 governing an employee's right to challenge an adverse employment decision are fully applicable here. *McNair v. United States Postal Serv.*, 768 F.2d at 735; *Lawson v. Truck Drivers, Chauffeurs & Helpers*, 698 F.2d 250, 255–56 (6th Cir.), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

■ Under § 301, if a plaintiff's claims are based, as here, upon breach of a collective bargaining agreement, he is bound by the terms of that agreement which govern the manner in which the contractual rights may be enforced. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Before bringing suit, the employee must at least attempt to exhaust the grievance and arbitration procedures established by the bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).

■ When the collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employees' rights under the agreement. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. at 914; *McNair v. United States Postal Serv.*, 768 F.2d at 735. Therefore, an aggrieved employee whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for breach of the collective bargaining agreement, or to attack in court the results of the grievance process. *Id.; Acuff v. United Papermakers & Paperworkers*, 404 F.2d 169, 171 (5th Cir. 1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969).

■ These rules, however, are not without exception. If the union has breached its duty of fair representation by arbitrarily refusing to pursue a claim through the grievance process or by doing so in a perfunctory of otherwise inadequate manner, the aggrieved employee is not foreclosed by the results of the grievance process. *Id.* He may sue his employer or his union or both but, in order to recover, he must prove that: (1) the union breached its duty of fair representation and (2) the employer breached the collective bargaining agreement. *Gutierrez v. United Foods, Inc.* 11 F.3d 556, 559 (5th Cir.1994); *McNair v. United States Postal Serv.*, 768 F.2d at 735.

■ In its Memorandum and Order signed July 6, 1994, this court determined that the union defendants had not breached their duty of fair representation and dismissed Ross and Imperial's claims against them. Therefore, Ross and Imperial are precluded from recovering against the postal service defendants for breach of the collective bargaining agreement, as they cannot establish the first element of such a claim. Accordingly, the postal service defendants are entitled to summary judgment on plaintiffs' claims for breach of the collective bargaining agreement.

### B. *Ross' Tort Claims.*

The postal service defendants assert that Ross' tort claims under the Federal Tort Claims Act (the "FTCA") and Texas common law should be dismissed due to this court's lack of subject matter jurisdiction.

■ The doctrine of sovereign immunity is a jurisdictional bar to suits against the United States, its agencies, and its officials acting in their official capacity, unless the government waives its immunity and consents to suit. *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Bank One v. Taylor*, 970 F.2d 16, 33 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). Without an express waiver of sovereign immunity, a district court is without subject matter jurisdiction to hear a suit against the federal government. *United States v. Sherwood*, 312 U.S. at 586, 61 S.Ct. at 769; *Houston v. United States Postal Serv.*, 823 F.2d 896, 898 (5th Cir.1987). The FTCA contains such a waiver and permits certain tort claims to be asserted against the United States. *United States v. Burzynski*

*Cancer Research Inst.,* 819 F.2d 1301, 1306 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988).

■ The FTCA is the exclusive means provided by statute for recovery of money damages against the United States in tort. 28 U.S.C. § 2674. The FTCA imposes liability on the United States for personal injuries, death, or injuries to or loss of property caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. §§ 1346(b), 2671–2680; *United States v. Kubrick,* 444 U.S. 111, 113, 100 S.Ct. 352, 355, 62 L.Ed.2d 259 (1979); *Garcia v. United States,* 538 F.Supp. 814, 816 (S.D.Tex.1982). Where the government waives its immunity from suit, however, as in the FTCA, the waiver must be strictly construed. *Vernell v. United States Postal Serv.,* 819 F.2d 108, 109 (5th Cir.1987); *Gregory v. Mitchell,* 634 F.2d 199, 204 (5th Cir. 1981).

In this case, the postal service defendants contend that Ross cannot utilize the remedies available under the FTCA because: (1) Ross is a federal employee who must proceed under the Civil Service Reform Act (the "CSRA"); (2) Ross' exclusive remedy for personal injuries is under the Federal Employees Compensation Act (the "FECA"); and (3) Ross has not exhausted his administrative remedies prior to bringing suit under the FTCA. The postal service defendants further assert that Ross' state law claims are barred by the doctrine of sovereign immunity or are preempted by the provisions of the CSRA.

### 1. *Ross Must Proceed under the Civil Service Reform Act.*

■ Generally, federal employees are precluded from bringing claims against the government when the claims "arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). The CSRA provides such remedies to federal civil servants. The CSRA is an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary actions by supervisors and procedures—administrative and judicial—by which improper action may be redressed. *Id.* at 385, 103 S.Ct. at 2415. Therefore, a federal employee may not bring a claim under the FTCA, but must proceed instead under the CSRA. *Morales v. Department of the Army,* 947 F.2d 766, 768–69 (5th Cir.1991); *Rollins v. Marsh,* 937 F.2d 134 (5th Cir.1991). The CSRA remedies are the comprehensive and exclusive procedures for settling work-related controversies between federal civil service employees and the federal government. *United States v. Fausto,* 484 U.S. 439, 444–46, 108 S.Ct. 668, 672–73, 98 L.Ed.2d 830 (1988); *Bush v. Lucas,* 462 U.S. at 385–86, 103 S.Ct. at 2415. The CSRA remedies also preempt any remedies under state common law for adverse employment actions. *Rollins v. Marsh,* 937 F.2d at 139.

Because Ross is a federal employee whose tort claims stem from his employment with the Postal Service, Ross is similarly situated to the plaintiffs in *Morales* and *Rollins.* Ross' status as a federal employee, therefore, prevents him from maintaining an action against the postal service defendants under the FTCA for employment-related claims because his remedy lies instead within the comprehensive remedial scheme set forth in the CSRA.

### 2. *Ross' Remedy under the Federal Employees Compensation Act.*

■ The FECA is a federal worker's compensation statute that provides an injured federal employee with a substitute method of recovery, which is more efficient and less expensive than a common law tort claim. *Bailey v. United States,* 451 F.2d 963, 965 (5th Cir.1971). Because it is intended to serve as a substitute for, rather than a supplement to a tort suit, the remedy under the FECA is exclusive of any recovery which otherwise might be obtained in the absence of the statute. *Id.*

■ The FECA provides, *inter alia,* that the United States shall pay compensation for the disability of an employee resulting from personal injury sustained while in the performance of his duty. 5 U.S.C. § 8102. The

compensation received by an employee under the FECA is his exclusive remedy for such injury and precludes the employee from bringing suit under a different statutory scheme, such as the FTCA. 5 U.S.C. § 8116(c). The Secretary of Labor is vested with the power to administer and decide all questions arising under the FECA, and his action in denying or granting compensation is final and conclusive and may not be reviewed by a court of law. 5 U.S.C. §§ 8128(b)(1) & (2), 8145. If there is a substantial question as to whether a plaintiff's injuries are covered by the FECA, the employee may not pursue a tort claim in an action under the FTCA until after he seeks and has been denied relief from the Secretary of Labor under the FECA. *See Bailey v. United States,* 451 F.2d at 965; *Avasthi v. United States,* 608 F.2d 1059, 1060 (5th Cir. 1979).

 Here, Ross may not seek redress for his injuries under the FTCA without first exhausting his remedies under the FECA. *See Swafford v. United States,* 998 F.2d 837, 839–40 (10th Cir.1993); *Bruni v. United States,* 964 F.2d 76, 78–79 (1st Cir.1992); *Burke v. United States,* 644 F.Supp. 566, 568 (E.D.La.1986). Because Ross has not exhausted his remedies under the FECA, he is not now entitled to seek redress against the postal service defendants under the FTCA or state tort law.

### 3. *Exhaustion of Administrative Remedies under the FTCA.*

 Because the sovereign's consent to waiver of its immunity is to be narrowly construed, a plaintiff must file any actions under the FTCA in exact compliance with its terms. To proceed under the FTCA, a claimant cannot file a lawsuit unless he has first presented an administrative claim to the appropriate federal agency and it has been finally denied or the agency has not made a final determination after the passage of six months. 28 U.S.C. § 2675(a). Compliance with the administrative claim process is a jurisdictional prerequisite to suit under the FTCA. *See, e.g.; United States v. Burzynski Cancer Research Instit.,* 819 F.2d at 1306; *Ducharme v. Merrill–Nat'l Lab.,* 574 F.2d

1307, 1311 (5th Cir.1978). The failure of a claimant to exhaust his administrative remedies prior to filing an action under the FTCA deprives the court of subject matter jurisdiction over the suit. *See Reynolds v. United States,* 748 F.2d 291, 292 (5th Cir.1984); *Taylor v. Administrator of Small Business Admin.,* 722 F.2d 105, 110 (5th Cir.1983).

 To be valid, an administrative claim must present sufficient facts to permit the government to investigate its liability and to conduct settlement negotiations, as well as assign a value to the claim. *See, e.g., Martinez v. United States,* 728 F.2d 694, 696–97 (5th Cir.1984); *Williams v. United States,* 693 F.2d 555, 557 (5th Cir.1982); *Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir. 1980).

 In the instant case, Ross has never filed a valid administrative claim. The only document Ross has filed that purports to be a claim is a letter dated June 13, 1993, written by Ross' counsel, reciting in conclusory terms Ross' legal claims and naming certain individuals against whom they are asserted. While the letter purports to "give notice" pursuant to the FTCA, it does not contain sufficient facts to allow the government to investigate its liability and conduct settlement negotiations. Recognizing the inadequacy, the Postal Service, on July 8, 1993, requested Ross to complete a Form SF–95 and to supply supporting documentation for the claim. To date, Ross has failed to comply with the request.

Moreover, Ross has not assigned a value to his tort claims. Under 28 C.F.R. § 14.2(a), the notification of an incident covered by the FTCA must be accompanied by a claim for money damages in a "sum certain." While the letter of June 13 requests $200,000.00 "to settle all of the tort and retaliation claims" against the Postal Service, there is no statement as to the total value of the tort claims. As a settlement demand that includes both Ross' tort and retaliation claims, this figure does not indicate what Ross believes the true value of his tort claims to be, and therefore does not meet the "sum certain" requirement of 28 C.F.R. § 14.2(a). *See Martinez v. United States,* 728 F.2d at 696.

Thus, as a result of Ross' failure to provide sufficient information to the Postal Service to commence a claim under the FTCA, Ross has failed to exhaust his administrative remedies and is precluded from bringing suit under the FTCA. Moreover, because his exclusive remedies lie under the CSRA for the employment claims and under the FECA for the personal injury claims, all of Ross' tort claims against the postal service defendants, whether asserted under the FTCA or Texas common law, are subject to dismissal.

### C. *Ross' Title VII Claims.*

 The remedy for claims of employment discrimination by federal employees under Title VII is provided in 42 U.S.C. § 2000e–16(a)–(e). *Henderson v. United States Veterans Admin.,* 790 F.2d 436, 439 (5th Cir.1986). Under this statute, federal employees must first exhaust their administrative remedies before they may bring suit in federal court. *Pacheco v. Rice,* 966 F.2d 904, 905 (5th Cir.1992); *Hampton v. IRS,* 913 F.2d 180, 182 (5th Cir.1990). Exhaustion of administrative remedies is a jurisdictional prerequisite to federal subject matter jurisdiction. *Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir.1990).

 In order to commence the administrative process—and subsequently exhaust it—a claimant must, prior to filing a complaint, consult an equal employment opportunity ("EEO") counselor within forty-five days of the date of the alleged unlawful employment practice. 29 C.F.R. § 1614.105. If there is no resolution of the matter during counseling, the claimant must file a formal claim with the Equal Employment Opportunity Commission (the "EEOC") within fifteen days after receiving a notice to file claim. *Id.* Failure either to notify an EEO counselor or file a claim in a timely fashion bars a complaint filed in federal court, absent an adequate showing by the employee of waiver, estoppel or equitable tolling. *See Bickham v. Miller,* 584 F.2d 736, 738 (5th Cir.1978); *Tillett v. Carlin,* 637 F.Supp. 251, 253–54 (D.Conn.1986).

#### 1. *Ross' Claim of June 18, 1993.*

Ross initiated the processing of his first EEO claim on May 10, 1993, through a letter written by his attorney. In connection with the matters addressed in the May 10 letter, Ross sought EEO counseling on May 26, 1993. In the May 26 counseling request form, Ross asserts that: (1) the Postal Service gave and continues to give minority workers menial tasks to perform; (2) the Postal Service promoted Gary Willoughby, a white employee, when it should have promoted Ross; and (3) Ross' Postal Service superiors have retaliated against Ross for his past EEO activity by subjecting him to poor working conditions. The EEO counselor processed Ross' request and, on June 9, 1993, completed the final interview and issued notice to file an EEOC claim. Ross filed a formal claim with the EEOC on June 18, 1993. Although not facially apparent, an examination of the facts reveals that Ross failed to comply with the initial EEO counseling deadlines.

 Ross attempts to invoke the "continuing violation" theory to sidestep his non-compliance with the statutory deadlines. Under that theory, where the unlawful employment practice manifests itself over time, rather than as a series of discrete acts, the violation may be found to be a continuing one that "relieves a plaintiff who makes such a claim from the burden of proving that the entire violation occurred within the actionable period." *Berry v. Board of Supervisors,* 715 F.2d 971, 979 (5th Cir.1983). To establish a continuing violation, however, a plaintiff must establish that the violation was part of a continuously maintained illegal employment practice. *Perez v. Laredo Junior College,* 706 F.2d 731, 734 (5th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). In addition, the plaintiff must show some application of the illegal policy to him or to his class within the forty-five day period preceding counseling. *See Abrams v. Baylor College of Medicine,* 805 F.2d 528, 533–34 (5th Cir.1986).

 With respect to the claim of menial task assignment, Ross must demonstrate an "adverse action" on the part of the Postal Service that occurred within the forty-five

days preceding his request for counseling. He must show an actual discrete event of assignment of menial tasks not also assigned to similarly situated white employees within this time period. Rather than making such a showing, Ross relies instead upon a blanket statement that the Postal Service gives minority general mechanics menial tasks to perform. This assertion is of no probative force, however, as the very nature of a general mechanic's job involves the performance of menial tasks from time to time. Ross has proffered no adequate summary judgment evidence to show that minority general mechanics were given menial tasks with greater frequency or treated differently in any respect than their white counterparts.

■ With regard to the promotion issue, the Postal Service has presented proper summary judgment evidence that Willoughby's only two upgrades occurred on April 22, 1989, and November 13, 1993. Thus, Willoughby was promoted approximately four years prior to Ross' May 26 request for counseling and received an automatic upgrade approximately six months after the request was filed. Because neither event occurred within the forty-five day window preceding Ross' May 26, 1993, request for counseling, Willoughby's upgrades cannot form the basis for Ross' Title VII claim.

■ With respect to the retaliation issue, Ross asserts in his EEOC complaint that several of his superiors "have allowed [him] to be continuously subjected to poor treatment by being placed in unsafe conditions (i.e.—the tunnel by [himself] and by not reviewing [his] performance)." Ross, however, provides no specific dates of the purported retaliatory actions, nor does he show that the actions were part of a fixed and continuing practice on the part of the Postal Service. In addition, Ross proffers no evidence suggesting that he or his racial class has been subjected to conditions not experienced by other similarly situated employees.

Therefore, Ross cannot establish a continuing violation as to his allegations of menial task assignment or retaliation, nor can he show that Willoughby's upgrades occurred within the forty-five days prior to his request for EEO counseling. Thus, Ross has failed to demonstrate that he exhausted his administrative remedies under Title VII with regard to his job assignment, promotion, or retaliation claims.

### 2. Ross' Claim of June 13, 1993.

■ On June 13, 1993, Ross sent a second letter to the Postal Service's EEO department, again through his attorney. The letter ostensibly attempts to initiate a second EEO claim, alleging that retaliatory action has been taken against Ross for the filing of the previous EEO claim. At no time prior to sending the June 13 letter, however, did Ross request or receive EEO counseling concerning this alleged retaliatory action. Consequently, as to this claim, Ross never had a final interview or received a notice to file a claim with the EEOC. Therefore, Ross failed to exhaust his administrative remedies with respect to his second retaliation claim.

Because Ross failed to meet the forty-five day counseling requirement for either of his EEO claims, he did not exhaust the administrative remedies available under Title VII, which is a jurisdictional prerequisite for bringing suit in federal court. Therefore, Ross' race discrimination and retaliation claims are subject to dismissal, as this court is without jurisdiction to consider them.

### III. Conclusion.

Because the union defendants did not breach their statutory duty of fair representation, Ross and Imperial are precluded from maintaining this action against the postal service defendants for breach of the collective bargaining agreement. Furthermore, Ross' tort claims, whether asserted under the FTCA or state common law, cannot be considered by this court. Ross is barred from bringing an action under the FTCA because he is a federal employee who must pursue employment-related claims under the CSRA and personal injury claims under the FECA. In addition, he failed to exhaust his administrative remedies under the FTCA. Ross' state law claims are likewise barred because they fall under the doctrine of sovereign immunity or are preempted by federal law. Finally, the court lacks jurisdiction over Ross' Title VII claims because he did not

exhaust the administrative remedies available to federal employees.

Accordingly, the postal service defendants' Motion to Dismiss or in the Alternative for Summary Judgment is GRANTED. The claims asserted by Ross and Imperial against the Postal Service, The United States of America, and Runyon are DISMISSED.

IT IS SO ORDERED.